IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL PANITZ, <br><br> Plaintiff, <br><br> v. <br><br> VERISTAR LLC, VERISTAR GLOBAL LLC, RICHARD AVERS, ROBERT LEUSER, KENNETH WITTENBERG, WILLIAM HEALY, and MARK BELONGIA, <br><br> Defendants. | Case No. 22-cv-5200 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Panitz brought this suit against Defendants alleging fraudulent inducement, breach of contract, and seeking relief under the Illinois Wage Payment and Collection Act. For the reasons stated herein, Defendant Healy's Motions to Dismiss [25] is granted and the Veristar Defendants' Motion to Dismiss [26] is granted in part and denied in part.

I. Background[1]

A. Veristar and the Asset Purchase Agreement

On October 1, 2019, Richard Avers and Kenneth Wittenberg formed Veristar, LLC ("Veristar"), an Illinois data solutions and legal services technology company. Compl. ¶ 15. Avers served as the President of Veristar and Wittenberg as its Vice President

---

[1] The factual allegations herein are taken from the operative complaint (Dkt. 1 "Compl.") and accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

1

of Finance and Acquisitions. *Id*. ¶¶ 10, 11. William Healy was a certified public accountant an investor in and manager of Veristar. *Id*. ¶ 13.

In October 2019, Veristar entered into an Asset Purchase Agreement ("APA") with two other data and legal services technology companies: Franklin Data Ventures, Inc. ("Franklin") and Nexem Iconic, LLC ("Nexem"). *Id*. ¶ 16. Under the APA, Veristar was to purchase all of Franklin's and Nexem's operating assets and liabilities. *Id*. ¶ 17. Veristar also agreed to pay them incentives upon reaching certain revenue milestones. *Id*. So that Franklin and Nexem could monitor Veristar's progress, the APA required Veristar to give both companies monthly accounting statements and access to Veristar's books and records. *Id*. Under the APA, default would result if Veristar failed to fulfill these conditions or make required payments. *Id*. On August 19, 2021, Franklin and Nexem requested access to Veristar's books and records. *Id*. ¶ 19. Veristar refused. *Id*. As a result, on August 30, 2021, Veristar was given written notice of its breach of the APA, but Veristar failed to cure the breach. *Id*.

Panitz alleges that Veristar's breach of the APA prompted Avers and Leuser to concoct a scheme to avoid legal liability: Avers, Leuser, Wittenberg, and Healy would form a new, separate company, while still providing the same services as Veristar. *Id*. ¶ 20. The purpose, Panitz claims, was "to frustrate Franklin's and Nexem's ability to recover under the contracts that Veristar had executed." *Id*.

**B. Veristar Hires Plaintiff and Forms Veristar Global**

In September 2021, Veristar began communicating with Panitz through a recruiter about possibly hiring Panitz. *Id*. ¶ 31. At the time, Panitz was employed by

UnitedLex Corporation ("UnitedLex") as the company's Senior Vice President of Litigation and Investigations. *Id.* ¶ 32. During two in-person meetings on October 6 and 7, 2021, Avers and Leuser told Panitz that they were interested in hiring him as President and CEO of Veristar, replacing Avers. *Id.* ¶¶ 33, 34. They communicated that Veristar was a ten-million dollar going concern, and did not mention that most of Veristar's existing business had come from the APA. *Id.* ¶ 35. They also did not inform him of Franklin's and Nexem's claims that Veristar had breached the APA and Security Agreement, which could result in Franklin reclaiming all of the assets Veristar purchased pursuant to the APA. *Id.*

Believing he would be hired to helm a ten million dollar going concern, Panitz sent a proposed agreement to the recruiter, who forwarded the document to Avers on October 11, 2021. *Id.* ¶ 36. The proposed agreement listed "Veristar, LLC" as the company Panitz would be heading. *Id.*, Exh. 4. Panitz continued to communicate and meet with Veristar personnel into November. *Id.* ¶¶ 37-44. No one disclosed that Franklin and Nexem had alleged that Veristar was in breach, and no one corrected Panitz when he stated that he was to be President and CEO of Veristar. *Id.*

In November 2021, Mark Belongia (Veristar's legal counsel) sent Panitz a draft employment agreement prepared at Avers' request. *Id.* ¶¶ 14, 46. The agreement's preamble stated that the agreement was between Panitz and "Veristar Global, LLC." *Id.* ¶ 46. Veristar Global LLC did not exist at that time. *Id.* On November 30, 2021, Panitz sent proposed revisions to the agreement to Avers and Belongia. *Id.* ¶ 49. On December 4, 2021, Panitz executed a final version of the Employment Agreement

3

("Employment Agreement") and also gave notice to UnitedLex that he was leaving. *Id.* ¶¶ 50-51. Avers executed the Employment Agreement and forwarded the signature page to Panitz on December 8, 2021. *Id.* ¶ 51. The agreement provided that Panitz was to receive, among other things, an annual base salary of $300,000, a $70,000 signing bonus, and fully subsidized health insurance. *Id.* ¶ 52; Exh. 5, p. 10. It also contained a provision that Panitz would be terminated if he failed to reach specific revenue milestones by specific dates. Exh. 5, p. 2-3. If Panitz should be terminated without cause, he would be paid 1) all base salary, benefits and commissions accrued up to his termination, and 2) a severance payout equal to six months of base salary from the date of termination. *Id.* ¶ 54.

On December 8, 2021, Veristar Global, LLC ("Veristar") was formed. *Id*. ¶ 51. On January 3, 2022, Panitz began work and shortly thereafter discovered that he was President and CEO of Veristar Global, a start-up company, not Veristar. *Id.* ¶ 55. Concerned that the company's start-up nature would prevent him from reaching revenue milestones, he tried to negotiate amendments to the milestones in the Employment Agreement. *Id.* ¶ 56. Avers rejected the amendments. *Id.* ¶ 57.

On August 31, 2022, Panitz's counsel Michael Tinaglia ("Tinaglia") sent a letter to Belongia informing him that Panitz had not been fully compensated. *Id.* ¶ 58. Tinaglia also advised that Panitz was preparing to sue Veristar. *Id.* On September 2, 2022, Avers emailed Panitz that Avers had his letter and that Panitz's employment was terminated. Exh. 6, p. 1. Panitz has not been paid his signing bonus or severance

4

payment. Compl. ¶ 62. Payment for his health insurance was deducted from his paycheck and repaid to him as taxable "commissions." *Id.*

### C. The Complaint and Motions

On September 23, 2022, Panitz filed a five-count complaint, alleging fraudulent inducement; aiding and abetting fraudulent inducement; breach of contract; violation of the Illinois Wage Payment and Collection Act (IWPCA); and retaliation under the IWPCA. Defendant William Healy filed a motion to dismiss [25], and Defendants Veristar LLC, Veristar Global LLC, Avers, Leuser, Wittenberg and Belongia also moved to dismiss. [26].[2]

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief").

A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the

---

[2] Veristar LLC and Veristar Global LLC have been dismissed from this case. As this Court previously ordered: "In light of the bankruptcy court confirming the organizational defendants' Plan, all claims against Veristar LLC and Veristar Global LLC are dismissed without prejudice." (Dkt. 48).

5

court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading requirement for fraud claims. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs. Inc.,* 536 F.3d 663, 668 (7th Cir. 2008).[3]

### III. Analysis

#### A. Count I- Fraudulent Inducement (Avers and Leuser)

Panitz alleges that Defendants Avers and Leuser are liable for fraudulent inducement because they misrepresented to Panitz that he would be hired as CEO and President of Veristar, not Veristar Global. Under Illinois law, fraudulent inducement requires: (1) a false representation of material fact, (2) made with knowledge or belief of that representation's falsity, (3) made with the purpose of

---

[3] The parties agree that Rule 9(b) applies to Counts I and II. *See* Dkt. 25; Dkt. 26; Dkt. 37-1.

inducing another party to act or refrain from acting, and (4) the other party reasonably relied on the representation to its detriment. *Enter. Recovery Sys. V. Salmeron*, 927 N.E.2d 852, 858 (Ill. App. Ct. 2010).

Defendants assert that Panitz waived any fraud claim because he "ratified the Employment Agreement by continuing his employment for nine months after allegedly learning of the 'fraud'". [25] at 7; [26-1] at 9. The Court agrees that Panitz's fraudulent inducement claim does not survive for this reason. Under Illinois law, "[a]n unreasonable delay in taking the necessary steps to set aside a fraudulent contract will have the effect of affirming it." *Freedberg v. Ohio Nat. Ins. Co.,* 975 N.E.2d 1189, 1197 (Ill. App. Ct. 2012) (cleaned up); *see also Kaiser v. Olson*, 435 N.E.2d 113, 118 (Ill. App. Ct. 1981) ("It is a well-established principle that a person defrauded in a transaction may, by conduct inconsistent with an intention to sue for damages for fraud, waive the right to sue."). A person misled by fraud must, once he learns the truth, "disaffirm or abandon the transaction with all reasonable diligence," and if, "after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations." *Havoco of Am., Ltd. v. Hilco, Inc.*, 731 F.2d 1282, 1288 (7th Cir. 1984) (quoting *Eisenberg v. Goldstein*, 29 Ill.2d 617, 195 N.E.2d 184, 187 (Ill.1963)).

Here, "shortly after beginning his work" in January 2022, Panitz learned that he was not CEO of Veristar, but nevertheless continued as Veristar Global's President and CEO. Compl. ¶¶ 55-58, 60-61. Panitz continued in this position for nearly nine

7

months, even after his proposed amendments to the Employment Agreement were rejected. *Id.* He was terminated September 2, 2022 and filed suit on September 23, 2022. *Id.* ¶ 60. *See Lillien v. Peak6 Invs., L.P.,* 2004 WL 1445231, at *6 (N.D. Ill. June 25, 2004), aff'd, 417 F.3d 667 (7th Cir. 2005) (individual who stayed with employer for nearly ten months "was doing exactly what the Illinois law concerning waiver tries to prevent-waiting to determine which is the more profitable course of action.").

Panitz concedes that he is not seeking to "avoid" the Employment Agreement, rather he seeks to enforce it. [37-1] at 4.[4] Moreover, in responding to Defendants' ratification argument, for support Panitz relies on only *Kenall Manufacturing Company v. Cooper Lighting*, 354 F. Supp. 3d 877 (N.D. Ill. 2018). But *Kenall* involved claims of patent infringement and breach of license agreement; the plaintiff did not assert a claim of fraudulent inducement. *See id.* Panitz's argument is therefore undeveloped. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are conclusory, underdeveloped, and unsupported by law are waived); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

For these reasons, Panitz's claim of fraudulent inducement against Avers and Leuser does not survive. Count I is dismissed.

### B. Count II- Aiding and Abetting Fraudulent Inducement (Wittenberg, Healy, and Belongia)

In Count II, Panitz contends that Wittenberg, Healy, and Belongia aided and abetted Veristar, Avers, and Leuser in their alleged fraudulent inducement. Aiding

---

[4] In his response to the Veristar Defendants' motion, Panitz adopted and incorporated by reference his Memorandum in Opposition to Healy's Motion to Dismiss. [36-1 at 6].

8

and abetting is a derivative claim and must be attached to an independent tort. *Chadha v. North Park Elem. Sch. Ass'n*, 123 N.E.3d 519, 537-38 (2018); *Catlett v. Infinity Healthcare Mgmt. of Illinois LLC*, No. 16 C 3867, 2016 WL 7116589, at *6 (N.D. Ill. Dec. 7, 2016) (aiding and abetting "does not present a separate cognizable cause of action."). Panitz argues that Avers' and Leuser's fraudulent misrepresentations are the underlying wrongful act, and he contends he has pled a plausible claim for fraudulent inducement. [36-1 at 7]. Because the fraudulent inducement claim has been dismissed, however, the aiding and abetting claim must be too. Therefore Count II against Wittenberg, Healy, and Belongia is dismissed.

Because Panitz does not ask for leave to amend Count I or II and does not articulate how he would cure deficiencies in these counts, the Court dismisses Counts I and II with prejudice. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects.").

### C. Count III- Breach of Contract (Avers, Lesuer, Wittenberg, Healy)

In Count III, Pantiz brings a breach of contract claim, alleging that the individual defendants are personally liable for Veristar or Veristar Global's obligations under and breach of the Employment Agreement. He alleges that Defendants failed to pay his signing bonus, health insurance, and severance payment. Compl. ¶ 99. According to Defendants, Panitz fails to pierce the corporate veil in order to hold them liable. Panitz maintains that there was no true separate existence between the Veristar

9

entities and the individuals—"both companies functioned as interchangeable alter egos of Avers and Leuser." [36-1] at 11.

"Corporations and limited liability companies are separate and distinct legal entities from their shareholders and from each other." *In re Udelhoven*, 624 B.R. 629, 642 (Bankr. N.D. Ill. 2021). "[A] court may disregard a corporate entity and pierce the veil of limited liability where the corporation is merely the alter ego or business conduit of another person or entity." *Id*. (cleaned up). Liability arises from "fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation." *Peetoom v. Swanson*, 778 N.E. 2d 291, 295 (Ill. App. Ct. 2002).

To pierce the corporate veil under Illinois law: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 776 (2005) (2d Dist. 2005). The Court acknowledges that "[p]iercing the corporate veil is not favored." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). At the same time, "[w]here a claimant fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied." *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.,* 172 F. Supp. 2d 992, 1001 (N.D. Ill. 2001). Here, drawing all reasonable inferences in Panitz's favor, the Court

10

finds that he has stated a claim sufficient to pierce the corporate veil as to Defendants Avers and Leuser.[5]

Panitz argues he has alleged sufficient facts to support piercing of the corporate veils of the Veristar entities. Indeed the complaint alleges: Veristar and Veristar Global are inadequately capitalized to meet the liabilities of both companies and both are insolvent (Compl. ¶ 76); the officers and directors exercise minimal to no independent authority vis-à-vis Avers and Leuser (*id.*); Veristar Global was an assetless company that defendants decided to form for the purpose of transferring assets from Veristar in order to avoid the reach of secured creditors (*id.* ¶ 20); and when Panitz received compensation it was issued through a different company, Exego International, LLC, one that Veristar had previously acquired (*id.* ¶ 63). Further, Panitz alleges that Avers and Leuser were the individuals who coordinated and directed the hiring process, and other individuals involved merely assisted and acquiesced in Avers' and Leuser's decisions (*id.* ¶¶34-51), and the letter he received in September 2022 stated that his employment with "Exego International, LLC, and Insperity" ended on September 2, 2022. *Id.* ¶ 64.

These allegations, along with the reasonable inferences taken therefrom, are sufficient to pierce the corporate veil and state a breach of contract claim against Avers and Leuser. The complaint shows that, if true, the circumstances allowing defendants to avoid their contractual liabilities would result in injustice or inequitable consequences. *See UIRC-GSA Holdings Inc. v. William Blair & Co.,*

---

[5] Panitz concedes his allegations are "insufficient to support a breach of contract claim against Defendants Wittenberg and Healy." [36-1 at 8].

11

*L.L.C.*, 289 F. Supp. 3d 852, 860–61 (N.D. Ill. 2018) (finding sufficient allegations of injustice based on claim that the corporate parent was "attempting to avoid its contractual obligations ... on the basis of the fiction of a corporate separation" between the parent and subsidiary).[6]

In sum, the Court does not find Defendants' arguments for dismissal of Panitz's breach of contract claim persuasive at this pleading stage. Defendants are free to raise these arguments again at a later stage of litigation after further factual development. *See e.g. Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020). Accordingly Count III survives but only as to Defendants Avers and Leuser.

### D. Count IV- IWPCA Violation (Avers, Lesuer, Wittenberg, Healy)

The IWPCA, 820 ILCS 115/1 *et seq.*, requires, among other things, that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." Section 2 of the Act "confirms that an employer is liable both for its own violations of the Wage Act and for any Wage Act violations committed by its agents," and Section 13 "imposes personal liability on any officers or agents who knowingly permitted the Wage Act violation." *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 899 (Ill. 2005). Panitz alleges that he has not received his final

---

[6] The case law cited by Defendants does not persuade the Court otherwise. Defendants rely on, for example, cases applying the state law notice pleading standard, *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796 (1st Dist. 2014), and cases not decided at the pleadings stage, *Wachovia Securities, LLC v. Banco Panamericano, Inc.*, 674 F.3d 743 (7th Cir. 2012) (decided after a bench trial); *Tower Invs., LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927 (1st Dist. 2007) (same); *A.L. Dougherty Real Est. Mgmt. Co., LLC v. Su Chin Tsai*, 98 N.E.3d 504 (1st Dist. 2017) (same).

compensation at all, and that Avers, Lesuer, Wittenberg, Healy are liable as "employers," as that term is defined under the IWPCA. Compl. ¶¶ 103, 112.

First, the Court does not agree with Defendants that Panitz failed to plead that he is entitled to severance pay as a component of final compensation. The complaint specifically alleges that under the Employment Agreement, Panitz "shall be entitled to a severance payout equal to Six (6) months of base salary from the date of termination," and Panitz "has not received the severance payment…even though he is entitled to that payment." Compl. ¶¶ 54, 62, 112. Next, Defendants' contention that it was "clear that the termination was for cause" instead of without cause [26-1 at 15] may be true. But it contradicts the complaint (*e.g.* Compl. ¶ 118) and is a question for summary judgment or trial, not a motion to dismiss.

Finally, the Court does not agree that Avers and Leuser cannot be held individually liable under the IWPCA. Defendants argue that Panitz fails to sufficiently state a claim for holding them personal liability, though they do not dispute that officers and directors can be liable under the IWPCA. [25 at 15], [26-1 at 14]. The Court finds that Panitz has made sufficient allegations as to Avers: He alleges that Avers made significant decisions about both Veristar entities and about Panitz's employment and termination. Compl. ¶¶ 20, 31-40, 50-51, 60-61, 76. The complaint shows that Leuser was involved in these decisions and negotiations as well, albeit to a lesser extent than Avers. *Id.* ¶ 20, 33-36, 41, 49. *See e.g. Zwick v. Inteliquent, Inc.*, 83 F. Supp. 3d 804, 810-12 (N.D. Ill. 2015) (discussing Section 2 and 13 of the Act and denying motion to dismiss IWPCA claim against individual officers).

At this pleading stage, Panitz's allegations give rise to the reasonable inference that Avers and Leuser knowingly permitted an IWPCA violation. *Andrews*, 838 N.E.2d at 899-900. Again, Defendants may challenge the factual basis for this at a later stage of litigation. *See Savory*, 947 F.3d at 412.

As to Healy and Wittenberg, however, the allegations do not give rise to this same inference. The complaint demonstrates that Healy and Wittenberg were aware of but minimally involved in employment decisions about Panitz. Panitz's contention that both were "content to rubber stamp [Avers and Leuser] taking advantage of Plaintiff" is not sufficient. *Cf. Zwick*, 83 F. Supp. 3d at 810 (plaintiff alleged that individuals had significant and central role in the decision to terminate him and made the decision to not pay plaintiff in accordance with the IWPCA).

Therefore, the complaint sufficiently alleges an IWPCA claim against Defendants Avers and Leuser only.

### E. Count V- Retaliation under the IWPCA (Avers, Lesuer, Wittenberg, Healy)

Defendants argue that there are no allegations that they knowingly permitted any violation of the IWPCA. Panitz alleges, however, that they "made the decision to terminate Plaintiff not for cause, but because Plaintiff complained to them orally regarding the failure to timely pay him all the wages to which he was entitled under the Act and because they received a letter from Plaintiff's attorney seeking payment of unpaid wages." Compl. ¶ 118. By terminating him for these reasons, Panitz claims, "Avers, Leuser, Wittenberg, and Healy illegally retaliated against Panitz in violation of the IWPCA." *Id.* ¶ 119. *Wilkinson v. Acxiom Corp.*, 611 F. Supp. 3d 547, 559 (N.D.

14

Ill. 2020) ("Section 14(c) of the IWPCA provides private plaintiffs with the right to bring a claim for retaliatory discharge.") (citing 820 ILCS § 115/14(c)). This Court has found that the IWPCA claim in Count IV survives against Defendants Avers and Leuser. The complaint read as a whole adequately alleges that these defendants retaliated against Panitz. The retaliation claim survives as to Avers and Leuser only.

Finally, Panitz seeks punitive damages in Count V. Compl. ¶ 121. Defendants argue that the complaint does not sufficiently allege willful and wanton conduct by them, and asks the Court to strike the request for punitive damages. Yet Defendants do not argue that punitive damages are not available at all, and the Court finds it would be premature at this stage to find that Panitz cannot pursue punitive damages. *See Bailey v. Worthington Cylinder Corp.*, No. 16 C 07548, 2017 WL 106461, at *3 (N.D. Ill. Jan. 11, 2017) ("Whether plaintiff is entitled to punitive damages must be resolved later in the case.").

### IV.   Conclusion

For these reasons, Defendant Healy's Motions to Dismiss [25] is granted and Defendants' Motion to Dismiss [26] is granted in part and denied in part. Counts I and II are dismissed with prejudice. Counts III, IV, and V survive as to Defendants Avers and Leuser. Defendants Belongia, Healy, and Wittenberg are dismissed.

E N T E R:

Dated: September 29, 2023

MARY M. ROWLAND
United States District Judge

16